**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>    **Plaintiff**<br><br>    **v.**<br><br>**JOSE VALDIVIA-DELGADO,**<br>    **Defendant** | **Civil No. 03-331 (DRD)** |

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

**I.   Procedural Background**

Defendant José Valdivia-Delgado was charged in a two count indictment with violations to Title 21 U.S.C. § § 841(a)(1), 846, 952(a) and 963. Count One of the indictment charges the defendant, with participating "from on or about October 1, 2001, up to and including April 30, 2003" in a conspiracy "to possess with intent to distribute one (1) kilogram or more of heroin", in violation of Title 21 U.S.C. § § 841(a)(1) and 846.  Count Two of the indictment charges the defendant with conspiracy during the same time frame to "commit an offense against the United States," that is, to import into the United States from Aruba one (1) kilogram or more of heroin, in violation of Title 21 U.S.C. § § 952(a) and 963.

The Defendant filed two previous motions to suppress.  On June 3, he filed a Motion to Suppress Wire Evidence Under Title III asserting that the government had failed to establish "necessity" for the wire interception as required under Title III (**Docket No. 103**).  On the same day, the Defendant moved to amend the motion to suppress, asserting that because the wiretapping was conducted through substantial participation of the U.S. Government, the evidence should be excluded pursuant to the Fourth and Fifth Amendments of the U.S. Constitution (**Docket No. 102**).

On June 4, 2005, the Court denied the Motion to Suppress found at **Docket No. 102** on the basis that it was filed late and in contravention of the Court's Management Order.  *See* **Docket No.**

**108**. **The Court also denied** the Motion to Suppress found at **Docket No. 103** "for the same reasons set forth at Docket Nos. 104, 105, 106, 107 and 108". *See* **Docket No. 109**. In general, the referenced Orders deny the motions on the bases of untimely filing and against the Court's Management Order found at Docket No. 37.

> The Order at Docket 104 states,
>
> [m]otion requesting until Monday, June 6, 2005 for the filing of specific discovery and discovery motions (Docket No. 98) is DENIED. The fact that this Court granted governments' motion for reciprocal discovery at the endorsed order dated May 24, 2005 granting the defense until June 3, 2005 to comply with the Governments' request for reciprocal discovery at Docket No. 97, does not mean that the defendant has two bites at the apple and can file late motions for Discovery and motions to Suppress against the Court's Scheduling Order (Docket No. 37). "Dispositive motions including motion to suppress shall be filed not later than February 17, 2004. Thereafter shall not be entertained. See Fed.R.Cr.P.12(2)". The government originally timely requested reciprocal discovery at Docket No. 39 on January 29, 2004. The Court granted twenty (20) days to the defendant to provide the reciprocal discovery at the Pretrial Conference held on February 23, 2004, and the defendant failed to comply causing a reiterated motion by the Government. . . . Furthermore, the fact that the defendant filed a motion on March 4, 2004 (Docket No. 46), as part of its bail request, which was denied by the Court, and affirmed by the Circuit, advising that the motion in limine was to be filed, does not mean that the defendant may file motions at the eve of jury trial against the Court's Management Order (Docket No. 37).

**Docket No. 104.**

The Order found at Docket 105 states, "*[t]he motion is late and it is filed without first exhausting Local Rule 116.1. The above motion is denied unless the same was previously requested following the procedures under Local Rule 116.1. If that is the case then the Government is ordered to comply under 116.1 and/or ordered to reply*". *See* **Docket No. 105**. The Order found at Docket No. 106 denied, without prejudice ,a motion to suppress evidence pursuant to Fed.R.Evid. 902. *See* **Docket No. 106**. Finally, the Order found at Docket No. 107 denies a request for discovery for the same reason as stated in the Order found at Docket No. 104. *See* **Docket No. 107**. The Order specifically states, "*The motion is late and appears to be filed without exhausting*

*Local Rule 116.1. The fact that this Court granted governments' motion for reciprocal discovery at the endorsed order dated May 24, 2005 granting the defense until June 3, 2005 to comply with the Governments' request for reciprocal discovery at Docket No. 97, does not mean that the defendant has a reason to reopen all discovery*". *See* **Docket No. 107**.

The pending new motion to suppress was filed on July 1, 2005, and is entitled Additional Motion to Suppress Wiretap Evidence Under Title III (**Docket No. 125**). The motion is almost identical to the previously filed Motion to Suppress Wiretap Evidence Under Title III (**Docket No. 103**, denied at Docket No. 109) and once again raises and challenges the issue of necessity under Title III, with a brief mention of the minimization requirement; raising both issues pursuant to 18 U.S.C. §§ 2518(1)(c) and 2518(5), respectively.

The government filed its response arguing that it is not required to establish necessity under Title III inasmuch as the wiretap in the case at bar was authorized by the Aruban Judicial authorities under the laws of Aruba, Netherlands Antilles (**Docket No. 132**).

The pending motion to suppress was referred to the undersigned on July 21, 2005, for consideration, resolution, and Report and Recommendation (**Docket Nos. 131, 134**).

## II.     Factual Background and Legal Contentions

The Defendant moves for suppression of all evidence gathered and resulting from Title III wire interception contending that if the Government intends to introduce the results of wiretapping or electronic surveillance it must comply with the procedural requirements for interception of wire communications as set forth in Chapter 119 of Title III of the Omnibus Crime and Control and Safe Streets Act of 1968.   More particularly, it is argued that the Government must  establish the necessity of the wiretap and it must have conducted the surveillance in such a way  as to minimize the interception of communications not otherwise subject to interception.  The Defendant did not request a hearing on the pending motion.

Criminal No. 03-331(DRD)                                                                                        Page No. 4

As noted above, the government contends that the wiretap at issue is one that was authorized by Aruban Judicial authorities under the laws of Aruba, Netherlands Antilles. Accordingly, it contends that the necessity requirements under Title III are inapplicable. The government offered (at Docket Nos. 132 and 133) the following evidence to the Court:

– Police Report dated November 20, 2002, authored by Aruban authorities, regarding an investigation into drug trafficking and money laundering.

– Authorization for Intercepting Conversations for Number 887503[1] by the examining judge in charge of criminal cases for the Court in First Instance of Aruba, dated November 25, 2002.

– Extensions of the Authorization for Intercepting Conversations Ordered by the examining judge for the Court in First Instance of Aruba dated December 5, 2002, December 17, 2002, January 3, 2003, January 14, 2003, January 30, 2003, February 12, 2003, February 24, 2003, March 12, 2003, March 26, 2003, and April 7, 2003.

– Request by the U.S. Department of Justice to Aruba for Assistance in Investigation, dated March 18, 2003, pursuant to the Treaty between the United States of America and the Kingdom of the Netherlands on Mutual Assistance in Criminal Matters (entered into force September 15, 1983). The request refers to an investigation of Jeffrey Grueninger and others, including José Valdivia. It requested intercepted conversations, telephone toll records of the intercepted conversations, and further investigation of other suspected telephone numbers related to the investigations.

– June 19, 2003, Police Report authored by Aruban authorities regarding the March 19, 2003, request for assistance in the investigation and prosecution of José Valdivia.

---

[1]The Orders issued by the Aruban Court indicate that during the investigation authorization was given for several different numbers. Some of those numbers changed during the course of the investigation due to a structural change by the local telephone company.

– June 23, 2003, Police Report authored by Aruban authorities explaining intercepted conversations between and mentioning José Valdivia.

– Correspondence dated June 25, 2003, from the Attorney General of Aruba forwarding documents in response to the U.S. Government's December 13, 2002[2], request for assistance for information regarding the investigation and prosecution of José de Sousa and others in Aruba.

– Correspondence dated July 3, 2003, forwarding the documents received from Aruba to the District of Puerto Rico, U.S. Attorney's Office.

### III. Analysis

### A. Title III of the Omnibus Crime Control and Safe Streets Act of 1968

#### 1. Sufficiency of the Application and Necessity Requirement

Under Chapter 119 of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, the standards and procedures allowing for the interception of wiretaps and electronic communication are set forth. 18 U.S.C. §§ 2510-21. By placing statutory requirements on warrants authorizing wiretaps "extending beyond the constitutional minimum mandated for other search warrants," Congress has "sought to protect the privacy of wire and oral communications while, at the same time, authorizing the use of electronic surveillance evidence obtained by law enforcement under specified conditions." *United States v. Nelson Rodríguez*, 319 F.3d 12, 32 (1st Cir. 2003); *United States v. López*, 300 F.3d 46, 51 (1st Cir. 2002)) citing *Bartnicki v. Vopper*, 532 U.S. 514 (2001)). As such, the interception of electronic communications by law enforcement authorities is an extraordinary investigative technique which use "is to be distinctly the exception and not the rule." *United States v. López*, 300 F.3d 46 at 51; *United States v. Hoffman*, 832 F.2d 1299, 1306 (1st Cir.

---

[2]The Court was not provided with the Government's December 13, 2002, letter of request, regarding the José de Sousa and others investigation. It was only provided with the Government's March 18, 2003, letter of request regarding the Jeffrey Grueninger (and others) investigation.

1987).  Given Congress' concern for preserving privacy, under Title III the government shall strictly adhere to statutory requirements and among other things is required to: 1) seek approval from the U.S. Attorney General in order to apply to a federal judge for a wiretap order; 2) if consent is obtained, the law enforcement officer must submit to the district court a written application for a wiretap (18 U.S.C. § 2516(1)); and 3) before issuing the wiretap, the district judge must determine the existence of certain enumerated factors and requirements to be in a position to issue an ex-parte order authorizing the wiretap.  18 U.S.C. § 2518(1), (3), (4).

In order to ensure that the government makes a reasonable, good faith effort to use other viable normal investigative techniques before resorting to the wire interception and to assure that Title III procedures remain the exception; law enforcement authorities seeking a wiretap warrant must submit a sworn affidavit, with a detailed proffer of specific items as set forth in 18 U.S.C. § 2518(1)(a), (b) (c),(d), (e) and (f).  Once a wiretap order is granted it is subject to review under two scenarios.  "First, the trial judge may consider a motion to suppress the evidence gathered by the wiretap that the issuing judge authorized; later, an appellate court may review the trial judge's suppression ruling."  *Nelson- Rodríguez,* 319 F.3d at 32 (citing *United States v. Ashley*, 876 F.2d 1069, 1074 (1st Cir. 1989)).  Upon review the government is required to establish that it first made a "reasonable good faith effort" to utilize other available normal and less intrusive investigative techniques before resorting to a wiretap.  *United States v. López*, 72 F.Supp.2d 5 (D.P.R. 1999).

### 2. Wiretaps Outside of Territorial Boundaries of the United States

Title III governs wiretaps by federal officials occurring within the United States and is inapplicable to surveillance activities outside of the United States. *United States v. Maturo,* 982 F.2d 57 (2d Cir.1992). The Court is aware of no authority that stands for the proposition that Title III applies to wiretaps conducted by foreign agencies.  While the First Circuit has not directly addressed the issue, the Second Circuit held that Title III has no extraterritorial application even

where United States law enforcement officers are directly involved in procuring the foreign wiretap. *See United States v. Toscanino,* 500 F.2d 267, 279-80 (2d Cir.1974) (Title III "significantly makes no provision for obtaining authorization for a wiretap in a foreign country"); *see also United States v. Cotroni,* 527 F.2d 708, 711 (2d Cir.1975) (the law that controls the legality of an interception is the law of the place wherein the interception takes place); *United States v. Peterson,* 812 F.2d 486, 492 (9th Cir.1987) ("Title III has no extraterritorial application"); *cf. United States v. Mitro*, 880 F.2d 1480 (1st Cir. 1989) (Canadian wiretap and use of evidence derived therefrom did not violated Fourth Amendment when American agents did not participate in the wiretap and the conduct of Canadian police in obtaining the wiretap did not shock the conscience). Indeed, unless a contrary intent appears, federal statutes apply only within the territorial jurisdiction of the United States. *Id.* at 711 (citations omitted).

The evidence before the Court indicates that the wiretaps at issue were authorized by Aruban authorities in accordance with Aruban law. There is no indication that the United States participated in the Aruban wiretap interceptions. Nor can it be said that even if there were United States involvement it was so extensive or significant that the wiretap must be viewed as an operation of the United States, and not the Aruban Government. Quite simply, the Defendant has provided no basis for the undersigned to conclude that Title III standards apply to the wiretap evidence at issue.

Accordingly, there is no merit to Defendant's claim and demand that the Government must establish necessity, reasonableness, or minimization of the wiretapping or electronic surveillance. We need go no further. Title III is inapplicable to the interceptions obtained pursuant to Aruban law.

It is also worth mentioning that the Court previously denied an almost identical Motion to Suppress (**Docket No. 103**) inasmuch as, it was not timely filed in comport with the Court's Management Order. *See* **Docket No. 109**. That prior Motion to Suppress was filed on June 3,

2005. The pending Motion to Suppress (**Docket No. 125**) was filed approximately one month later on July 1, 2005. Hence, in accordance with the Court's prior rulings, the undersigned also finds the current Motion to Dismiss to be untimely filed and in contravention of the Court's Management Order.

### B.     Evidentiary Hearing

A criminal defendant is not entitled, as a matter of right, to an evidentiary hearing on every motion that he chooses to file. *United States v. Staula,* 80 F.3d 596, 603 (1st Cir.1996); *United States v. Pellerito,* 878 F.2d 1535, 1545 (1st Cir.1989). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." *Staula,* 80 F.3d at 603. *See also United States v. Lilly,* 983 F.2d 300, 310-11 (1st Cir.1992). "Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." *Id. See, e.g., Lilly,* 983 F.2d at 310-11. The First Circuit Court of Appeals has held that district courts have considerable discretion in determining the need for evidentiary hearings. *Id. See also United States v. Lewis,* 40 F.3d 1325, 1332 (1st Cir.1994); *United States v. McAndrews,* 12 F.3d 273, 280 (1st Cir.1993).

Here, defendant did not request an evidentiary hearing. More so, he has not met the requisites[3] that would have otherwise entitled him to a pretrial evidentiary hearing. Finally, the simplicity of the motion and the exhibits presented to the Court make an evidentiary hearing unnecessary. Accordingly, the pending motion is disposed of without an evidentiary hearing.

### IV.     Conclusion

---

[3]The Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978) concluded that defendants are entitled to an opportunity to challenge the truthfulness of the allegations within affidavits supporting search warrants applications. However, to be entitled to challenge the predicate of said warrants, the defendants are required to make not a general but rather a "substantial showing that: (1) a statement in the affidavit was knowingly and intentionally false, or made with reckless disregard for the truth and (2) the falsehood was necessary to the finding of probable cause." *Nelson-Rodríguez,* 319 F.3d at 34 (1st Cir. 2003). A *Franks* hearing is not warranted given the fact that the wiretap seizure of evidence took place outside the territorial limits of the United States.

For the above-stated reasons, it is **RECOMMENDED** that the defendant's Additional Motion to Suppress Wiretap Evidence Under Title III (**Docket No. 125**) be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within five (5) days**[4] of its receipt.  Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and Recommendation is a waiver of the right to review by the District Court.  *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).  The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 6th day of September, 2005.

S/**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**

---

[4]On July 15, 2005, the District Court placed the parties on notice that the time to file objections to any Report and Recommendation issued, was to be limited to five (5) days.